## GRIFFIN v. HOUSTON OIL CO. OF TEXAS.

(Court of Civil Appeals of Texas. Galveston. May 30, 1912. Rehearing Denied June 27, 1912.)

1. ADVERSE POSSESSION (§ 115*)—EVIDENCE—QUESTION FOR JURY.

Evidence in trespass to try title *held* to make issue of defendant's adverse possession of the land described in his answer for more than ten years before the commencement of the suit a question for the jury.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 314, 691–701; Dec. Dig. § 115.*]

2. ADVERSE POSSESSION (§ 115*)—QUESTION FOR JURY—NOTICE TO FORMER OWNER.

The inclosure and cultivation of a small field makes the question whether such possession and use of the land is sufficient to put the owner upon notice that the person in possession is claiming the tract of land upon which it is situated, or a larger portion than that actually inclosed, one for the jury.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 314, 691–701; Dec. Dig. § 115.*]

3. ADVERSE POSSESSION (§ 57*)—SUFFICIENCY OF EVIDENCE—ABANDONMENT.

Evidence in trespass to try title *held* sufficient to show that defendant's father abandoned his occupancy and use of a survey before defendant's adverse claim to any part thereof.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 277, 278, 655, 667, 687; Dec. Dig. § 57.*]

4. INFANTS (§ 24*)—EMANCIPATED MINOR—ADVERSE POSSESSION.

The fact that a party took possession of and set up a claim to land for his own benefit while a minor, but with his father's permission to acquire the land for himself, would not prevent him from acquiring title to the land by limitation.

[Ed. Note.—For other cases, see Infants, Cent. Dig. § 25; Dec. Dig. § 24.*]

5. ADVERSE POSSESSION (§ 80*)—SUFFICIENCY OF CLAIM—DESCRIPTION OF PROPERTY.

A claim to land described as 160 acres, within definite north, east, and west boundaries, leaving the location of the south boundary line only a matter of measurement and

describing a tract of 160 acres, is a description sufficient to identify the land claimed.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 463–467; Dec. Dig. § 80.*]

Appeal from District Court, Hardin County; L. B. Hightower, Judge.

Trespass to try title by the Houston Oil Company of Texas against T. J. Griffin. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Singleton & Dies and W. H. Nall, all of Kountze, for appellant. H. O. Head, of Sherman, and Hightower, Orgain & Butler, of Beaumont, for appellee.

PLEASANTS, C. J. This is an action of trespass to try title brought by the appellee against the appellant to recover a tract of 220 acres of land in Hardin county, Tex. The 220 acres sued for is described as the N. ¼ of a 1,280-acre tract patented to Hardin county on May 18, 1876, by patent No. 541, vol. 21, less 100 acres. The appellant disclaimed title to all of the land, except a tract of 160 acres described in his answer, as to which he pleaded title by limitation of 10 years. After hearing the evidence, the trial judge, on motion of plaintiff, instructed the jury to find a verdict in favor of plaintiff, and upon the return of such verdict judgment was rendered accordingly.

The evidence shows that plaintiff has a regular chain of title to the 220 acres of land from the sovereignty of the soil. In 1894 and 1895, respectively, Ivy M. Griffin, appellant's father, and J. M. Griffin, appellant's uncle, made settlements in the northwest corner of the 1,280-acre tract. The land at that time belonged to the Village Mills Company, and when said company found the Griffins in possession of its land they procured from them the following acknowledgment of tenancy:

"The State of Texas, County of ———:

"Know all men by these presents, that I, Ivy M. Griffin, of the county of Hardin, do hereby acknowledge that I now live on a certain tract of land, situated in said county of Hardin, namely, a survey No. 226 of land originally granted to Hardin county, and which land is situated on the south side of Village creek, and which said tract of land now belongs to the Village Mills Company, and I do hereby acknowledge the ownership of said land to be in said company, and that I hold possession of said land by and with the consent of said Village Mills Company as its tenant at will.

"Witness my hand this 9th day of June, A. D. 1894.

              his
    "Ivy M.  X  Griffin.
             mark

"State of Texas, County of ———:

"Know all men by these presents, that I, J. M. Griffin, of the county of Hardin, do

hereby acknowledge that I now live on a certain tract of land, situated in Hardin county, namely, survey No. 266, originally granted to Hardin county, and which land is situated on the south side of Village creek, and which tract of land now belongs to the Village Mills Company, and I do hereby acknowledge the ownership of said land to be in the Village Mills Company, and that I hold possession of said land by and with the permission of the said Village Mills Company, as their tenant at will.

"Witness my hand this 19th day of June, A. D. 1895. J. M. Griffin.

"Witness: Ivy M. Griffin."

[1] In 1896 Ivy M. Griffin inclosed and put in cultivation about one acre of land on the 160-acre tract now claimed by appellant. In December, 1896, the Village Mills Company sold the 1,280-acre survey to Olive Sternenberg & Co. Ivy and J. M. Griffin continued to reside on the tract, and in 1899 Olive Sternenberg & Co. conveyed to Ivy Griffin 100 acres out of the northwest corner of the 1,280-acre survey. This 100 acres included the improvements and all of the land on the tract theretofore occupied by Ivy and J. M. Griffin, except the 1-acre field, before mentioned, which was situated about 150 yards east of the east line of the 100-acre tract. Appellant was then about 19 years old, was living with his father, and has continued to live with him ever since. After Ivy Griffin bought the 100-acre tract, he ceased to cultivate the 1-acre field; but appellant, with the consent of his father, took possession of said field, continued to cultivate it, and began to claim 160 acres of land lying east and south of his father's 100-acre tract. His claim to said 160 acres was continuous and notorious for more than 10 years before this suit was filed. He cultivated the 1-acre field every year for five years, and then opened another field of 2½ acres on said 160-acre tract, which he continued to cultivate up to the time of the trial. When he opened the 2½-acre field, he abandoned the 1-acre field and used the fence thereon in inclosing the new field. His occupancy and use of the land by the cultivation of the two small fields, above mentioned, continued for more than 10 years before the institution of this suit. The 2½-acre field was some distance south and west of the 1-acre field, and its northwest corner was within 20 or 30 feet of his father's fence on the south line of the 100-acre tract; but it was inclosed separate and apart from the inclosure on his father's land. After Ivy Griffin purchased the 100-acre tract, his brother, J. M. Griffin, who was unmarried, moved into the same house with him, and has lived with him ever since.

It is not shown that either Ivy or J. M. Griffin have ever used, occupied, or made any claim to any part of the land, except the 100-acre tract, since the purchase of said tract by Ivy. Appellant testified that he

knew the location of the north and east lines of the 1,280-acre survey, and the east and south lines of his father's 100-acre tract, and that the 160 acres claimed by him was in an L shape and lay south and east of his father's tract. The land described in appellant's answer, and designated on the plat contained in the statement of facts as the 160 acres claimed by appellant, begins at the northeast corner of the Ivy Griffin 100-acre tract on the north line of the 1,250-acre survey; thence with said north line to the northeast corner of said survey; thence with the east line of said survey to a point thereon, from which a line runs west to the west line of the survey; and thence north with said west line to the southwest corner of the 100-acre tract, east with the south line of said tract to its southeast corner, and north with the east line of said tract to the place of beginning, containing 160 acres.

We think this evidence raised the issue of the adverse possession and claim by appellant of the land described in his answer for more than 10 years before the institution of this suit, and the trial court should not have taken the case from the jury.

[2] It cannot be held, as a matter of law, that the inclosure and cultivation of a field of 2½ acres, or of 1 acre, is not sufficient possession and use of land to put the owner upon notice that the person cultivating such field is claiming the tract of land upon which it is situated or a larger portion of said tract than the amount actually inclosed and cultivated. The sufficiency of such possession as notice is a question of fact to be submitted to the jury, under proper instructions.

The acknowledgment of appellant's father that his possession of the 1,280-acre survey, prior to his purchase of the 100-acre tract, was as a tenant at will of the Village Mills Company, who then owned the survey, does not affect the adverse character of the subsequent possession by appellant.

[3] Whether the sale of the land by the Village Mills Company terminated the contract of tenancy or not, the evidence justifies the conclusion that Ivy Griffin, after his purchase of the 100-acre tract, abandoned his occupancy and use of the remainder of the survey, and appellant's subsequent possession of the land, not being under his father, the prior acknowledgment of tenancy by the father would not prevent appellant from claiming adversely to the owner.

[4] The fact that appellant, at the time he took possession and set up claim to the land, and for several years thereafter, was a minor would not prevent him from acquiring title to the land by limitation. His father testified that he gave appellant permission to acquire the land for himself, and that it was not held and cultivated for his benefit by appellant. Under these facts, the father could not claim the land by virtue of its occupancy and cultivation by appellant, and appellant's minority could not affect the question of his adverse possession of the land. The father having consented that the son could acquire the land for himself, and never having made any claim to the land, appellant's occupancy was for his own benefit; and to the extent of the right thus acquired by him in the land he must be regarded as having been emancipated by his father.

[5] The boundaries of the 160 acres claimed by appellant were sufficiently known to identify the land. Appellant knew the north, east, and west boundaries of the 160 acres claimed by him, and the location of the south boundary line was only a matter of measurement. We think the evidence would sustain the finding that the 160 acres claimed by appellant since he began the cultivation of the small fields thereon is the identical 160 acres described in his answer.

For the reason indicated, the judgment of the trial court is reversed and the cause remanded.

Reversed and remanded.